**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J.O.P.G., | ) Case No.: 1:25-cv-01751-KES-SKO (HC) |
| Petitioner, | ) |
| | ) FINDINGS AND RECOMMENDATION TO |
| | ) GRANT PETITION FOR WRIT OF HABEAS |
| | ) CORPUS |
| v. | ) |
| | ) |
| | ) |
| | ) |
| WARDEN OF THE GOLDEN STATE | ) |
| ANNEX DETENTION FACILITY, et al., | ) |
| | ) |
| Respondents. | ) |
| | ) |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner filed the instant petition on December 5, 2025. (Doc. 1.) On January 9, 2026, Respondent filed a response to the petition. (Doc. 10.) Petitioner did not file a traverse.

Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. He claims he should be immediately released, or alternatively, provided a bond hearing before an immigration judge ("IJ") at which the Government must justify his continued detention by clear and convincing evidence.

1

For the reasons discussed below, the Court will recommend the petition be granted and Respondents be directed to provide Petitioner with a bond hearing before an immigration judge.

## I.    BACKGROUND

Petitioner is a native and citizen of El Salvador who entered the United States without inspection on June 16, 2024, at the San Ysidro, California, port of entry as part of the CBP One Application program. (Doc. 10-1 at ¶ 6.) On June 17, 2024, he was placed in removal proceedings with issuance of a Notice to Appear charging him with inadmissibility under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. (Doc. 10-1 at ¶ 7.)

On September 27, 2024, after ICE received intelligence that Petitioner was one of the founders of Mara Salvatrucha ("MS-13") – a designated foreign terrorist organization – and a member of the West Side Locos Salvatruchos Clique (U.S. gang) and the Hollywood Clique (El Salvador gang), Petitioner was arrested and taken into ICE custody. (Doc. 10-1 at ¶ 8.)

Petitioner had previously been removed from the United States on August 10, 2007. (Doc. 10-1 at ¶ 9.) He had been placed into removal proceedings on May 6, 2006, pursuant to his arrest and conviction for alien smuggling. (Doc. 10-1 at ¶ 9.) In addition, on March 27, 2007, Petitioner was convicted of the crime of "cocaine-sell," a felony. (Doc. 10-1 at ¶ 9.)

On October 3, 2024, Petitioner appeared at his first immigration court hearing. (Doc. 10-1 at ¶ 10.) At the hearing, Petitioner requested and was granted additional time to obtain counsel. (Doc. 10-1 at ¶ 10.)

At his next hearing on October 10, 2024, Petitioner pleaded to the allegations and charge contained in the Notice to Appear, and the Immigration Judge ("IJ") sustained the charge of inadmissibility. (Doc. 10-1 at ¶ 11.) El Salvador was designated as the country of removal. (Doc. 10-1 at ¶ 11.) Petitioner requested and was granted additional time to prepare and file applications for relief from removal, which the IJ granted. (Doc. 10-1 at ¶ 11.)

On October 23, 2024, Petitioner appeared at his third immigration court hearing. (Doc. 10-1 at ¶ 12.) The IJ scheduled his final hearing for November 13, 2024, to adjudicate his pending applications for removal. (Doc. 10-1 at ¶ 12.)

On November 13, 2024, at the final hearing, the IJ denied all applications for relief from removal and ordered Petitioner removed to El Salvador. (Doc. 10-1 at ¶ 14.) On December 11, 2024, Petitioner appealed the IJ's decision to the BIA. (Doc. 10-1 at ¶ 15.)

On April 7, 2025, the BIA issued a briefing schedule. (Doc. 10-1 at ¶ 16.) On June 20, 2025, Petitioner filed a petition for review and motion for stay at the Ninth Circuit Court of Appeals. (Doc. 10-1 at ¶ 17.) On June 23, 2025, the BIA dismissed Petitioner's appeal. (Doc. 10-1 at ¶ 18.) On September 18, 2025, Petitioner filed a motion to reopen at the BIA. (Doc. 10-1 at ¶ 18.) On January 22, 2026, the motion to reopen was denied. See Executive Office for Immigration Review Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation, (search conducted using Petitioner's alien number). Petitioner's removal is currently stayed pending mandate from the Ninth Circuit.

**II.    DISCUSSION**

A.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention. See Demore v. Kim, 538 U.S. 510, 517 (2003).

B.  Mandatory Detention under 8 U.S.C. § 1225(b)(1)

Petitioner states he has been in continuous detention since September 27, 2024. He contends the approximately 16-month period has become prolonged and indefinite, and he should be given a bond hearing, or in the alternative, released from custody.

1.    Statutory Background

A non-citizen who is present in the United States but has not been admitted is considered an applicant for admission. 8 U.S.C.A. § 1225(a)(1).  Such applicant is subject to expedited removal if

3

the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)–(II). Once "an immigration officer determines" that a designated applicant "is inadmissible," "the officer [must] order the alien removed from the United States without further hearing or review." 8 U.S.C.A. § 1225(b)(1)(A)(i). Here, Petitioner was determined inadmissible and placed in expedited removal proceedings. (Doc. 10-1 at ¶ 7.)

If an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C.A. §§ 1225(b)(1)(A)(i)–(ii). The point of this screening interview is to determine whether the applicant has a "credible fear of persecution." § 1225(b)(1)(B)(v). If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive "full consideration" of his asylum claim in a standard removal hearing. 8 C.F.R. § 208.30(f); see 8 U.S.C. § 1225(b)(1)(B)(ii). If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the asylum officer's determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with it, the applicant may appeal to an immigration judge, who can take further evidence and "shall make a de novo determination." 8 U.S.C.A. §§ 1003.42(c), (d)(1); see 8 U.S.C. § 1225(b)(1)(B)(iii)(III). Here, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture. (Doc. 1 at ¶ 23.) The IJ denied Petitioner's applications, and the BIA denied the appeal. (Doc. 10-1 at ¶ 18.)

Regardless of whether the applicant receives full or expedited review, he or she is not entitled to immediate release. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 111 (2020). They "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(iii)(IV)). Likewise, applicants who are found to have a credible fear may also be detained pending further consideration of their asylum applications. Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(ii)). In either case, the applicant must be detained until the conclusion of those proceedings. Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).  However, an applicant "may be temporarily released on parole 'for urgent humanitarian reasons or significant

public benefit.'" Id. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).  Said parole request is considered by designated ICE Enforcement Removal Operations ("ERO") officers. 8 C.F.R. § 212.5(a). "Such parole, however, 'shall not be regarded as an admission of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

### 2.    Due Process in Prolonged Immigration Detention

Petitioner contends he has been unreasonably detained for 16 months without a bond hearing in violation of his due process rights.  He argues that due process requires he should be granted a bond hearing before an immigration judge to determine whether he is a risk of flight or danger to the community, or released.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which states that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).  This Court and "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." Maliwat v. Scott, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting Banda v. McAleenan, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019); A.E. v. Andrews, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1225(b) for 20 months); see also Rogers v. Ripa, No. C21-24433, 2022 WL 708493, at *4-5 (S.D.

5

Fla. Jan. 22, 2022), *report and recommendation adopted*, 2022 WL 574389 (Feb. 25, 2022); Romero Romero v. Wolf, 2021 WL 254435, at *3 (N.D. Cal. Jan. 26, 2021); Leke v. Hott, 521 F. Supp. 3d 597, 604-05 (E.D. Va. 2021); Martinez v. Clark, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019); Thompson v. Horton, 2019 WL 4793170, at *5 n.7 (N.D. Ala. Aug. 26, 2019).

The Ninth Circuit has also noted that many courts have applied the Mathews[1] test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). However, the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims."). Nevertheless, several district courts in the Ninth Circuit including this Court have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing when subjected to prolonged detention. See, e.g., A.E. v. Andrews, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025); Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020); Riego v. Scott, 2025 WL 660535 (E.D. Cal. 2025).

The Ninth Circuit has noted the common use of the Mathews test and assumed (without deciding) that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case appropriate.

Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the

---

[1] Mathews v. Eldridge, 424 U.S. 319 (1976).

6

fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court evaluates Petitioner's private interest in being free from detention. Petitioner has been detained over 16 months. This period is substantially greater than the six-month presumptively reasonable period set forth in Zadvydas and qualifies as prolonged. 533 U.S. at 701.

In Rodriguez Diaz v. Garland, the Ninth Circuit stated that "in evaluating the first prong of the Mathews analysis, it is not sufficient to simply count the months of detention and leave it at that. The process received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." 53 F.4th at 1208.  The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing under the first Mathews factor." Id. at 1213.

Here, most of this delay was caused by Petitioner. He was ordered removed on November 13, 2024. Since that time, he filed an appeal with the BIA which was dismissed on June 20, 2025. On June 23, 2025, he filed an appeal with the Ninth Circuit which stayed removal pending further order of the court. Id. at 1208 ("We also cannot overlook that most of the period of [petitioner's] detention arose from the fact that he chose to challenge before the BIA and later this Court the IJ's denial of Immigration Relief"); see Prieto-Romero, 534 F.3d at 1063-65 & n.9 (holding that a non-citizen's detention was not unconstitutionally indefinite when it was prolonged by a challenge to his removal order). Furthermore, Petitioner's "private interests are further diminished by the fact that he is subject to an order of removal from the United States." Rodriguez Diaz, 53 F.4th at 1208. In sum, Petitioner's detention of 16 months is longer than the 6-month presumptively reasonable period; however, most of the delay is due to Petitioner's own actions.  Thus, the first factor weighs in favor of the Government.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, the Court finds this factor weighs in favor of Petitioner. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3.  Here, there is no indication that Petitioner has been provided a bond hearing. Although the Government ascertained that Petitioner was

a danger to the public when it arrested Petitioner after learning of his gang affiliations, the probable value of additional procedural safeguards, i.e., a bond hearing, remains high, because no neutral arbiter has determined whether Petitioner presents a flight risk or danger to the public. Thus, the second factor weighs in favor of Petitioner.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in effecting removal. Demore, 538 U.S. at 531. In addition, the government has a strong interest in protecting the public. Petitioner has demonstrated his inability to abide by the law. He unlawfully re-entered the United States after being removed and he sustained three prior convictions. There are also indications he may be one of the founders of MS-13 and a member of criminal street gang.

As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz v. ICE Field Office Director, 2020 WL 1862254, at *7 (D. Or. 2020) (collecting cases). Petitioner seeks a bond hearing, not unqualified release. Providing a bond hearing would not undercut the government's asserted interest in affecting removal. Indeed, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community. See In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006). At such hearing, the Government would be free to explore Petitioner's criminality in demonstrating Petitioner's potential risk of danger to the public.

Given "the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." Zagal-Alcaraz, 2020 WL 1862254, *7 (quoting Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government has a strong interest, it is outweighed by Petitioner's.

On balance, the Mathews factors weigh in Petitioner's favor and outweigh the Government's interest in further detention without inquiry into whether he represents a flight risk or danger to the

community.  The Court thus finds that Petitioner's prolonged detention without a bond hearing before an IJ violates his Fifth Amendment due process rights.

C.  Bond Hearing

Having determined that a bond hearing is required, the question of who bears the burden of proof at said hearing must be answered. Petitioner contends that the Government should bear the burden of proof to justify detention by clear and convincing evidence. Respondents contend Petitioner should bear the burden.

The Court finds that the government should be required "to prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)); Black v. Decker, 103 F.4th 133, 159 (2d Cir. 2024) (affirming district court's order "requir[ing] the government to show at such a bond hearing, by clear and convincing evidence, the need for Black's continued detention" under § 1226(c)); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 214 (3d Cir. 2020) (holding that in order to justify a noncitizen's continued detention under § 1226(c) "the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community"). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017); Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

/////

/////

9

### III.    RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be GRANTED and Respondents be DIRECTED to provide Petitioner with a bond hearing before an IJ wherein the Government must demonstrate by clear and convincing evidence, in accordance with the requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011), that Petitioner is a flight risk or a danger to the community, or in the alternative, release Petitioner on appropriate conditions of supervision.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:    **February 19, 2026**                        /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE

10